Ronald H. JALAS and Pamela J. Jalas, Administrators of the Estate of Jazelle J. Jalas, Deceased; Ronald H. Jalas, Individually; Pamela J. Jalas, Individually; and Ronald Jalas, Jr., a Minor by his Father and Next Friend, Ronald H. Jalas, Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant.

No. 92–1667.

Supreme Court of Iowa.

Sept. 22, 1993.

E. David Wright and Dirk J. Hamel of Norman, Gilloon, Wright, Hamel & Faber, P.C., Dubuque, for defendant.

Richard J. Barry and Michael R. Bovee of Montgomery, Barry & Bovee, Spencer, for plaintiffs.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

SNELL, Justice.

The United States District Court for the Southern District of Iowa has certified a question of law to this court pursuant to Iowa Code sections 684A.1 and 684A.3 (1991) and Iowa Rules of Appellate Procedure, 451 and 461. The question certified requests this court to determine whether the provisions of Iowa's uninsured and underinsured motorist statute which requires an insurer to offer uninsured and underinsured motorist coverage apply to an excess or "umbrella" liability policy.

I. The following undisputed facts were presented. In May 1984, a car occupied by Thomas and Sally Berglund collided with another car occupied by the Jalas family in O'Brien County, Iowa. Jazelle Jalas was killed, Ronald and Pamela Jalas suffered serious injuries, and Ronald Jalas, Jr. sustained loss of consortium damages.

The Jalas family ultimately was awarded a judgment against the Berglunds for $1,897,703.80. The Berglunds had total liability coverage of $1,500,000 under all of their insurance policies. Therefore, the Berglunds were $397,703.80 "underinsured."

The Jalas' sought to recover this amount from the underinsured motorist portions of their insurance policies. Ronald Jalas had three motor vehicles insured in separate policies with various amounts of underinsured motorist coverage. The issues regarding coverage under these policies are not before this court.

Ronald and Pamela Jalas also had an excess or "umbrella" liability policy with State Farm Fire and Casualty Company. Ronald Jalas had signed a form in which he rejected uninsured and underinsured motorist coverage under this policy. The parties dispute whether this rejection comports with Iowa Code section 516A.1, which states that insurance policies that offer uninsured and underinsured motorist coverage must meet specific rejection requirements if the coverage is not included.

II. Before this court is the question whether the State Farm Fire policy, an "um-

brella" liability policy, is required to include underinsured motorist coverage pursuant to Iowa Code section 516A.1. We are not asked to decide whether the rejection completed by Robert Jalas was effective under that statute.

While this is an issue of first impression in Iowa law, the question has been addressed by other jurisdictions. Some jurisdictions which have examined the meaning of "automobile or motor vehicle liability policy" in the state's uninsured motorist statute have determined the state legislature intended this phrase to include an "umbrella" liability policy. These jurisdictions found no rational distinction between a primary automobile or motor vehicle liability policy and an excess liability policy which includes automobile or motor vehicle liability, at least regarding uninsured and underinsured motorist coverage. These jurisdictions state that if an "umbrella" liability policy offers liability coverage for "ownership, maintenance, or use" of an automobile or motor vehicle, then the "umbrella" liability policy, too, is an automobile or motor vehicle liability policy, and insurers must comply with the underinsured motorist statute. *See Cincinnati Ins. Co. v. Siemens*, 16 Ohio App.3d 129, 474 N.E.2d 655, 657 (1984); *Southern Am. Ins. Co. v. Dobson*, 441 So.2d 1185, 1192 (La.1983) (dissenting opinion adopted on rehearing).

Applying the same analysis, other jurisdictions have found that "automobile or motor vehicle liability policy" in the state's uninsured motorist statute does not include an excess liability policy. These jurisdictions rely on the distinctions between a primary liability policy and an "umbrella" liability policy in scope and purpose. *See O'Hanlon v. Hartford Accident & Indem. Co.*, 639 F.2d 1019, 1027 (3d Cir.1981) (applying Delaware law); *Trinity Universal Ins. Co. v. Metzger*, 360 So.2d 960, 962 (Ala.1978); *St. Paul Fire & Marine Ins. Co. v. Gilmore*, 165 Ariz. 113, 121–22, 796 P.2d 915, 923–24 (1990); *Cohn v. Pacific Employers Ins. Co.*, 213 Conn. 540, 569 A.2d 544, 548 (1990); *Rowe v. Travelers Indem. Co.*, 245 Mont. 413, 800 P.2d 157, 161 (1990); *Matarasso v. Continental Casualty Co.*, 56 N.Y.2d 264, 451 N.Y.S.2d 703, 705, 436 N.E.2d 1305, 1307 (1982).

III.   Iowa Code section 516A.1, our uninsured motorist statute, states:

No automobile liability or motor vehicle liability insurance policy insuring against liability for bodily injury or death arising out of ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in such policy or supplemental thereto, for the protection of persons insured under such policy who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or a hit-and-run motor vehicle or an underinsured motor vehicle because of bodily injury, sickness, or disease, including death resulting therefrom, caused by accident and arising out of ownership, maintenance, or use of such uninsured or underinsured motor vehicle, or arising out of physical contact of such hit-and-run motor vehicle with the person insured or with a motor vehicle which the person insured is occupying at the time of the accident. Both the uninsured motor vehicle or hit-and-run motor vehicle coverage, and the underinsured motor vehicle coverage shall include limits for bodily injury or death at least equal to those stated in section 321A.1, subsection 10. The forms and provisions of such coverage shall be examined and approved by the commissioner of insurance.

Iowa Code chapter 321A is our financial responsibility statute, which requires individuals to prove ability to respond in damages for liability for automobile or motor vehicle operation to at least limits of $20,000/$40,000/$15,000. Iowa Code § 321A.1(10).

While chapter 516A does not define "automobile liability or motor vehicle liability insurance policy," Iowa Code section 321A.21 provides a clue to what the legislature intended "motor vehicle liability policy" to encompass. That section states:

1.   A *"motor vehicle liability policy"* as said term is used in this chapter shall mean an owner's or an operator's policy of liability insurance, certified as provided in section 321A.19 or section 321A.20 as proof

of financial responsibility, and issued, except as otherwise provided in section 321A.20, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

. . . .

7. Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants such excess or additional coverage the term *"motor vehicle liability policy"* shall apply only to that portion of the coverage which is required by this section.

(Emphasis added.)

These statutory provisions defining a "motor vehicle liability policy" apply only to policies or the portions thereof which provide the minimum financial responsibility limits of $20,000/$40,000/$15,000. Additional coverage in excess of those limits is not regulated by the statute. We recently recognized the distinction between a primary insurance policy and an excess or "umbrella" policy in *LeMars Mutual Insurance Co. v. Farm & City Insurance Co.*, 494 N.W.2d 216, 218 (Iowa 1992). In *LeMars*, we noted that primary insurance is purchased to be the first tier of insurance coverage while an umbrella policy is intended to cover only catastrophic losses which exceeded the insured's required primary insurance limit. *Id.* at 218. "Umbrella" policies would not be included under section 321A.21.

We believe the same analysis applies in construing section 516A.1. Just as "motor vehicle liability policy" in chapter 321A applies only to liability coverage providing our statutory minimum of financial responsibility, "automobile liability or motor vehicle liability insurance policy" in section 516A.1 applies only to the primary, first tier, basic insurance coverage. Any excess or umbrella coverage is not governed by the dictates of chapter 516A. Therefore, we hold that Iowa Code chapter 516A does not require excess or

"umbrella" liability insurers to provide additional coverage beyond the requirements placed on the primary policy insurer in section 516A.1.

**CERTIFIED QUESTION ANSWERED.**