OPINION OF THE COURT
Edward J. Greenfield, J.
Petitioner, City of Long Beach, moves by order to show cause seeking to stay the arbitration commenced by respondent pursuant to a demand for arbitration, upon the grounds that the claims respondent seeks to arbitrate are not subject to arbitration under the agreement between the parties. Respondent cross-moves for an order pursuant to CPLR 404 dismissing the petition upon the grounds that: (1) petitioner’s *120 motion for a stay of arbitration is untimely under CPLR 7503 (c); and (2) that the claims raised by respondent in its demand for arbitration are indeed arbitrable.
The dispute between the parties arises out of a solid waste disposal agreement entered into on or about April 15, 1986 between the City of Long Beach and S & S Incinerator Joint Venture (S & S), a joint venture formed pursuant to New Jersey law with its offices in Secaucus, New Jersey. Shortly after entering into the agreement, S & S assigned its obligations under the solid waste disposal agreement to Montenay Power N.Y. Corp., a New York corporation, which, in or about December 1986, changed its name to that of respondent, Catalyst Waste-to-Energy Corporation of Long Beach (Catalyst). The agreement apparently contemplated that a solid waste incinerator and electrical generating facility in Long Beach was to be constructed in Long Beach, New York. The agreement declares that the parties intend the "agreement to provide for the delivery and disposal of the City’s Solid Waste at the Facility beginning on the Commercial Operation Date, and to set forth and define their respective rights and responsibilities thereto.”
The dispute which respondent seeks to arbitrate involves the calculation of the amount to be paid by the city for each ton of solid waste delivered for disposal at the facility (the Tipping Fee). The Tipping Fee, pursuant to section 7.2 of the agreement is to be calculated annually on the basis of the formula set forth in schedule A of the agreement and, pursuant to section 7.2.1 of the agreement, prior to the beginning of each year, respondent is to calculate the Tipping Fee for the subsequent year and furnish the city with a statement of the proposed Tipping Fee and the basis for the computation of such fee (§ 7.2.2). Pursuant to section 7.2.2, the annual statement furnished by respondent to the city containing the proposed Tipping Fee for the subsequent year is binding upon petitioner unless, within 10 days after delivery of the statement, the city notifies respondent as to any objections it has to the statement.
Section 7.2.2 further provides that upon the inability of the parties to resolve any disputed "item” in connection with the statement, "the item in dispute shall be submitted to binding arbitration in New York, New York in accordance with the rules then obtaining of the American Arbitration Association.”
*121 In January 1988, respondent provided the city with the proposed Tipping Fee for the year 1988. By letter dated February 2, 1988, petitioner objected to the respondent’s calculation, and stated "We stand ready to discuss this and any other matters of mutual concern at your earliest convenience.”
What efforts, if any, the parties made toward "good faith negotiations” to resolve their differences as called for by the agreement is unclear from the parties’ submissions. On June 22, 1988, respondent served upon petitioner, by certified mail, its demand for arbitration and statement of claim. The demand for arbitration served upon petitioner conspicuously contained the following provisions: "please take further notice that pursuant to section 7503 (c) of the Civil Practice Law & Rules unless within twenty days after service of this Notice of Intention to Arbitrate you apply to stay the arbitration herein, you shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time.”
A month later, petitioner moved by order to show cause dated July 22, 1988 to stay the arbitration and, by cross motion dated August 9, 1988, respondent moved for an order pursuant to CPLR 404 dismissing the petition.
The question of the timeliness of petitioner’s application for a stay, rather than the merits and arbitrability of the dispute is determinative here. CPLR 7503 (c) provides that upon the failure of a party served with a notice of intention to arbitrate, or demand for arbitration, to apply for a stay of the arbitration within 20 days after service of the notice or demand, the party served is precluded from objecting that a valid agreement was not made or has not been complied with. It is clear that "service” of the notice or demand occurs on its receipt by a party without reference to any additional period allowed by reason of the mailing of the notice or receipt. (Cosmopolitan Mut. Ins. Co. v Moliere, 31 AD2d 924.) Equally clear is the well-established precept that once the 20-day period in which to apply for a stay of the arbitration has lapsed, the court is powerless to extend the period. (Aetna Life & Cas. Co. v Stekardis, 34 NY2d 182; Matter of Jonathan Logan, Inc. [Stillwater Worsted Mills], 31 AD2d 208, affd 24 NY2d 898; Cowper Co. v Clintstone Props., 120 AD2d 976, lv denied 68 NY2d 610.)
*122 The exhibit annexed to the supplemental affidavit of Scott J. Tross sworn to on August 15, 1988, submitted on behalf of respondent, indicates delivery of the demand for arbitration by the United States Postal Service to petitioner on June 24, 1988, requiring that petitioner had to have moved for stay of the arbitration not later than July 14, 1988.
Petitioner contends, however, that the solid waste disposal agreement, which allegedly involves interstate commerce, is not governed by CPLR 7503, but is subject to the Federal Arbitration Act (9 USC § 1 et seq.) (the FAA) which contains no prescribed time limit in which a party may move for a stay of arbitration. Further, petitioner argues, even if CPLR 7503 (c) were applicable, its application for a stay is timely.
In support of its argument as to the applicability of the FAA, petitioner points to the numerous interstate aspects involved in the financing, construction and operation of the solid waste facility, which petitioner argues support its contention that the FAA is applicable to the agreement between the parties. Respondent disputes the applicability of the FAA, based upon what it considers essentially an intrastate contract. This question need not be resolved. Even if the provisions of the FAA were applicable to this agreement, the time limitations of CPLR 7503 (c) would still govern, absent any specific limitation contained within the FAA. As recently held by District Court Judge Kenneth Conboy in Morgan v Nikko Secs. Co. Inti. (691 F Supp 792, 794, n 1 [SD NY, July 28, 1988]): "Whether the employment contract between the parties is governed by state law or the Federal Arbitration Act * * * a New York court would apply CPLR section 7503 (c). That section’s time period 'has been construed as a statute of limitation.’ * * * As the FAA does not contain any mechanism for seeking a stay of arbitration, a New York court would 'borrow’ CPLR 7503 (c). See generally DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 171 * * * (1983) ('resort to state law remains the norm for borrowing of limitations periods’).”
Petitioner’s alternative argument, advanced without citation of authority, that the time in which a party may move to stay arbitration under CPLR 7503 (c) commences to run upon receipt of notice from the American Arbitration Association that respondent’s demand for arbitration "had been filed” is contrary to the plain mandate of CPLR 7503 (c). CPLR 7503 (c) indicates that the time in which to move to stay arbitration commences from service of the notice or demand for arbitra *123 tion, and not from the time the AAA acknowledges receipt of a party’s submission.
In light of the applicability of CPLR 7503 (c) to this proceeding, whether under State or Federal law, petitioner’s application is clearly untimely, occurring more than 20 days after receipt by petitioner of respondent’s demand for arbitration. Accordingly, the cross motion of respondent to dismiss the petition upon the grounds that petitioner’s application is untimely under CPLR 7503 (c) must be granted, and petitioner’s application to stay arbitration must be denied.
In light of the foregoing determination, it is unnecessary for this court to determine the arbitrability of the issues contained in respondent’s demand for arbitration.